May it please the court, Lisa Pickering for the petitioner Rudy Racinos. I would request to reserve four minutes of my time for rebuttal. Sure. In this matter, the Board of Immigration Appeals erred in upholding the denial of asylum. The petitioner's testimony and documentary evidence submitted indicated he faced past persecution when he was tied up and beaten by Zeta Cartel members. He faced additional persecution when he was threatened with death if he failed to join their gang. He also showed well-founded fear of future persecution if returned to Guatemala on account of these threats. Contrary to the Board's analysis, Mr. Racinos' particular social groups are cognizable and distinct. Witnesses to gang activity, men targeted for recruitment, and men who refused to join a gang. Here's a question I've got for you. The BIA pre-remitted the question of whether or not these were appropriately recognized as particularized social groups and said, even assuming that these are valid PSGs, there's no nexus. That strikes me as wrong, meaning one of them is, witnesses to gang activity are threatened to remain silent. That precisely describes him. I mean, and that's what happened to him. So what am I supposed to do with that? Am I supposed to send it back and say, well, you're totally wrong. These are connected. Would you please decide the PSG question? I do think they made two errors regarding the particular social group and the nexus argument. One is that they did not conduct a de novo review of the nexus argument, and the other one is that they failed to consider the particular social groups. For both of these reasons, I do think that the case should be remanded back for a more thorough analysis or cogent decision regarding those two issues. The, in particular, witness to the criminal activity, the board and the immigration judge characterized this more as random violence. And while it started off as random, they ran into his house to his home and hogtied all of his family. They then treated him as a witness to their crime, and the reason that they sought to recruit him to extort for them was because he was the witness. So because the nexus is that he is a witness to their crime, and they used him and targeted him on account of that particular social group. And so that's where the board's analysis fails. As to whether or not these are cognizable particularized social groups, I guess is not in front of us because the BIA didn't decide it. I guess they went with their assuming arguendo, we still feel it fails. Because I think they were a little bit afraid of this case because those are not so far off from things that are recognized PSGs. Right, yes. Witness to a criminal activity is definitely a cognizable social group within the Ninth Circuit. And their focus on the nexus analysis, but then just adopting the finding of the immigration judge is I think where the... And then there's another problem that they didn't get to because of the way they treated this as no nexus. But they didn't get to it, which is to say, what's the level of harm? Does this arise to the level of persecution? Well, they tied him up and they hit him in the face, but that's about it. Our position is that being hogtied, beaten up, and having to seek medical treatment for that does in fact rise to the level of persecution. Yeah, although that's not in front of us at the moment. Yes. And that also it presents a well-founded fear of future persecution knowing that this is what the respondent has faced in the past and given his harm to other family members. I imagine government counsel is going to get up here and say, well, this is basically a general crime case. And what I mean by that is there's all kinds of case law in our circuit that says just street crime and bad crime situations are not a grounds for relief in immigration cases. What's your response to that anticipated argument? This is not a case where it is generalized crime. In Rodriguez, the woman was robbed coming out of a bank or getting money out of a bank. That could happen anywhere. People get mugged all of the time. In this case, the Zetas coming into his house was random. He was not targeted for that. His house happened to be in the location where they were fleeing from the police. But once they became aware of him and all of the male members of his family, that they're the right age for recruitment, they're the people who can now identify that the Zetas know of their house, that the Zetas have harmed him, that he may go to the police, that is when it becomes something other than just random generalized violence. Because they are specifically seeking him out and returning to him and to his house because of things that they recognize about him. And I assume that we're supposed to treat all of his testimony as I didn't see an adverse credibility finding. There was no adverse credibility finding. So whether he would be targeted, don't his mom and sister still live in northern Guatemala and they've remained unharmed? They do, but they were specifically targeted as men, and men and women are targeted differently by gangs. There's no indication in the country reports or any of the point 60 or 70 year old woman would necessarily be targeted for the type of activity that he was being recruited for, to go out and extort other neighbors for money. They would be the victims of the extortion rather than the extorters. They wouldn't be recruited to become a Zeta or do activities for the Zeta. They would be the victims of the Zeta. And was his mother in the house at the time? It was a little unclear to me from the record. I don't believe she was home at the time. It was just the male members of the family. Because I think it was his mother's house. It was his mother's house. Yeah. But then after the recruiting episode, everybody moves. They move to a second location in another area. Yeah, yeah. They move north to join the sister. Yeah. Okay. Do you want to reserve your time? Yes, that's fine, Your Honor. Very well. Thank you, counsel. Good morning, Sarah Pergolese for the government, and may it please the court. Your Honor, substantial evidence supports the agency's conclusions in this case, and I'd like to actually start with Judge Fletcher's question about the framing of the social groups and then how there can't be any motive to frame the social groups as constructed. The fundamental issue in this case, I think, is that the social groups were constructed to describe the petitioner's own circumstances. Yeah, that's a pretty close match. Very close match. But there's also plenty of case law, as Judge Owens mentioned, plenty of case law in the Ninth Circuit that indiscriminate recruitment is not a protected motivation. And so we're asked to then square that precedent with the way the petitioner has framed this social group. This does not appear to be indiscriminate, and he's threatened the first time around even before the recruitment. I mean, I think he's got a nexus based on the first episode. On the first episode? That is to say, break into the house, keep your mouth shut, or I'll kill you. Well, again, the motivation to withstand retaliation and to avoid prosecution is also not a protected motive. What we're asked critically is whether, I think the critical question in this case, is whether these kinds of motivations, retaliation or trying to avoid prosecution and recruitment, are protected motives at all. Well, then you're back to the particularized social group, which they assumed was valid. My problem is, if these social groups are valid, the nexus is just right here in front of us. It's a complicated, but again, I think there's plenty of cases like Elias Zacharias even says that recruitment without being motivated by a protected ground, or recruitment alone is not a protected reason. And yeah, I understand that. We're going in circles. The court doesn't need to reach this issue because the other finding that the government was unable or unwilling to protect the petitioner is an independently dispositive finding with respect to asylum and withholding. So even given this complication and this issue with the nexus finding, if the court disagrees with it, it still should deny the petition for review on the basis of the unwilling and I've got trouble with, I mean, this issue about unable or unwilling to protect comes up all the time out of Northern Triangle cases. And the record for all three of those countries is just replete with evidence that the government is in league with or is unable to control the gangs. Now, whether unable or unwilling to control with respect to this, that's a little harder. But we, I mean, everybody who's dealt with these cases knows that the gangs are not controlled by the government. I'm not disputing that gang violence is a problem in Guatemala, of course, that would be absurd. But the evidence in this case doesn't compel the conclusion that the government's unable and willing, especially given the petitioner's own personal circumstances and testimony that in his small town of only 2,000 people, the military were actively pursuing the gang. That's why they came into his home in the first place. And this evidentiary record isn't as forceful as evidentiary records in other cases. And I think a pivotal example is the decision you authored in JR, where the country conditions evidence showed that El Salvador was unable to control and curtail gang violence. But the country conditions reports in this case are not nearly as forceful. They say corruption exists and that gang violence is widespread, but that the government has engaged in significant efforts to curtail it, and that the government recently, part of the government voted to continue the anti-corruption efforts that were in place through a third non-government organization. And so again, this record is not nearly as forceful as other records that the court has considered. And I don't think the evidence in this record compels the contrary conclusion. This is totally nitpicking and totally irrelevant to your argument. You said you authored an opinion. I prefer that you said I wrote it. I'm sorry. I hate authored as a verb. I will keep that in mind for future arguments. And I recognize it's totally irrelevant to this argument. But it's good to know. So thank you. I think Rodrigo Zuniga is really informative in this case, and I would belabor the points that I've made already. But we're asked, the agency in the first instance, these cases are very fact-dependent. They're asked about the actual motivations of the perpetrators. And here, there's no compelling evidence, let alone a lot of evidence, to show that the persecutors had any motives aside from increasing the ranks and general criminality. Judge, you petitioner's brothers who were also in the house in the first instance in the record. But the asylum application does indicate that those brothers have returned to the hometown. Their location is listed as Tisclate. So that is some evidence that even petitioner's brothers who are almost in identical circumstances as him, he hasn't testified that they've been harmed. Yeah. On the other hand, the nephew has been killed. We don't know the circumstances. Right. This is a dangerous neighborhood, so to speak. It's certainly not all roses. But again, the question is whether it's dangerous for a protected reason, not just whether it's dangerous, which, of course, the court understands. There's one last thing I'd like to, it doesn't seem like the court has a lot of questions, so I definitely don't want extra credit. But I would just like to stress that the unable and willing standard and the acquiescent standard with respect to Kat are different, and the acquiescent standard is a heightened standard. So for similar reasons to my arguments about unable and willing, the evidence in this record also doesn't compel that the Guatemalan government would participate in or acquiesce in the future harm that the petitioner fears. So the court should deny the petition for review on that basis as well. Thank you. Thank you, Counsel. With regard to the unwilling or unable standard, the evidence in the record shows that the Guatemalan government has a very low prosecution rate, and also the respondent did testify that he had personally witnessed the police ripping up a police report. Even though they made efforts to pretend that they were taking a police report, they immediately threw it away. He did not believe that the government would be able to protect him. And the country conditions do indicate that they are unable to meaningfully protect their members, their citizens at this time. Are there any other questions for me? All right. Thank you very much. Thank you both for your counsel and the briefs that you authored. This matter is submitted. And we'll move on to our final case of the day.
judges: FLETCHER, OWENS, Schreier